1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7        SOUTHERN DISTRICT OF CALIFORNIA
8
9  BENJAMIN R., [1]                          Case No.: 24-cv-1731-LL-MMP
10                          Plaintiff,        **REPORT AND**
11  v.                                        **RECOMMENDATION REGARDING**
                                              **PLAINTIFF'S MERITS BRIEF**
12  FRANK BISIGNANO, Commissioner of
    Social Security,[2]                       [ECF No. 14]
13                          Defendant.
14
15

16        Plaintiff Benjamin R, proceeding pro se and in forma pauperis, appeals the final

17  decision of the Commissioner of Social Security denying his application for disability

18  insurance benefits under Title II of the Social Security Act. ECF Nos. 1, 6.

19        This matter comes before the Court for a Report and Recommendation on Plaintiff's

20  Merits Brief. ECF Nos. 12, 14.[3] Defendant filed a Responsive Brief, and no reply brief was

21

22  _____

23  [1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government
24  parties by using their first name and last initial.

25  [2] Frank Bisignano is the current Commissioner of Social Security and is automatically
26  substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

27  [3] As discussed below, the Court considers both Plaintiff's initial filing as well as his
28  supplemental filing captioned "Merits Briefing" for purposes of this appeal. ECF Nos. 12,
    14.

filed. ECF No. 16. After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **RECOMMENDS** that the District Judge **AFFIRM** the Commissioner's denial.

## I.    PROCEDURAL HISTORY

On October 25, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning March 1, 2020. Administrative Record ("AR") 199–200, 36–37. Plaintiff's alleged impairments include tenosynovitis, gastroparesis, thyroid problem, neuropathy, diabetes, back pain, arthritis, and anxiety. AR 67. The claim was denied by initial determination on March 9, 2022, and upon reconsideration on December 9, 2022. AR 66–82, 83–128.

Plaintiff filed a written request for a hearing. AR 149–50. On October 3, 2023, the Administrative Law Judge ("ALJ") held an online video hearing. AR 34–65. Plaintiff, represented by counsel, as well as an impartial vocational expert testified. AR 36–63. On January 26, 2024, the ALJ issued an unfavorable decision denying benefits. AR 17–29.

Plaintiff requested Appeals Council review, which was denied on July 25, 2024. AR 1–6. The ALJ's decision then became the final decision of the Commissioner of Social Security. 42 U.S.C. § 405(h).

Plaintiff timely appealed the denial to this Court for federal judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). ECF No. 1.

## II.    SUMMARY OF ALJ'S FINDINGS

### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or

combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least twelve months; if not, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1509 (setting forth the twelve-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, Appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. § 404.1520(e). The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

At step four of the sequential process, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv) and (f)–(g).

At step five, the burden then shifts to the ALJ to establish the claimant is not disabled because there is other work existing in "significant numbers in the national economy" the claimant can do, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c); *see also* 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). The ALJ usually meets this burden by either (1) the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations that are supported by the record, or (2) reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, Appendix 2. *Id*. The determination of this issue comprises "the fifth and last step" in the sequential analysis. 20 C.F.R. § 404.1520(a)(4)(v).

**B.    The ALJ's Application of the Five-Step Process**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since March 1, 2020, his alleged onset date. AR 19.

At step two, the ALJ determined Plaintiff had the severe impairments of "diabetes mellitus, type I with peripheral neuropathy, hypothyroidism, gastroparesis, bilateral carpal tunnel syndrome, attention deficit hyperactivity disorder ('ADHD'), obsessive compulsive disorder, and general anxiety disorder." AR 20. The ALJ found Plaintiff's other alleged impairments of hyperlipidemia, gastroesophageal reflux disease, mild degeneration of the lumbar spine, minimal degenerative joint disease right wrist, and diabetic retinopathy were non-severe, reasoning "based on the objective medical evidence, it appears these conditions have been managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." AR 20.

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing, noting in particular he considered Listings 1.18, 9.00, 11.14, 12.00, 5.00, 12.02, and 12.06. AR 20–21. Applying the psychiatric review technique for evaluating mental impairments at step three, the ALJ determined Plaintiff had moderate limitations in the areas of "understanding, remembering or applying information" and in "concentrating, persisting or maintaining pace," and he had mild limitations in the areas of "interacting with others" and in "adapting or managing oneself." AR 21.

Between steps three and four, the ALJ determined Plaintiff had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), with certain exertional, postural, environmental, and mental limitations as follows:

> occasional climbing of ramps/stairs, never climbing of ladders/ropes/scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling, frequent push/pull with the bilateral upper and lower extremities, frequent handle/finger with the bilateral upper extremities. The individual must avoid concentrated exposure to fumes, odors, gases and other pulmonary irritants, and to hazards such as operational control of moving

machinery and unprotected heights. The individual can understand, remember, and carry out simple, routine tasks, and is limited to jobs requiring only simple work-related decisions however can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work.

AR 22.

At step four, the ALJ concluded Plaintiff was not capable of performing his past relevant work as a Fast-Food worker, Deli cutter and slicer, and User support analyst. AR 27.

At step five, the ALJ considered that Plaintiff was a "younger individual" as of the alleged disability onset date and had at least a high school education. AR 27. The ALJ determined transferability of job skill was not material to the disability determination because "using the Medical-Vocational Rules as a framework supports a finding [Plaintiff] is 'not disabled,' whether or not [he] had transferable job skills." AR 27–28. The VE testified, given Plaintiff's age, education, work experience, and RFC, he would be able to perform the requirements of representative occupations of Price Marker, DOT 209.587-034 (light exertional level, unskilled, with an SVP of 2), Office Helper, DOT 239.567-010 (lighter exertional level, unskilled, with an SVP of 2), and Counter Clerk, DOT 249.366-010 (light exertional level, unskilled, with an SVP of 2). AR 28. Based on the vocational expert's testimony, the ALJ determined Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 28.

Accordingly, the ALJ found Plaintiff had not been under a disability from March 1, 2020 through January 26, 2024, the date of the ALJ's decision. AR 29.

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)) (citation modified). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (citation modified). The standard requires "more than a mere scintilla, but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015), as amended). Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

A reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id*. The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id*. at 1010; *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) ("Courts can consider only the reasons the ALJ asserts.") (citation modified).

A court may also reverse the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec*., 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id*. at 932 (citation modified) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## IV.    ANALYSIS

### A.    Plaintiff's Challenges to the ALJ's Opinion

Plaintiff initially filed a document listing his impairments accompanied by twelve exhibits of medical records and notes. ECF No. 12. The Court ordered Plaintiff to file a supplemental merits brief explaining his assertion of how the ALJ erred in his decision. ECF No. 13. The Court also noted numerous records filed by Plaintiff post-date the ALJ's decision dated January 26, 2024 and therefore appear to be outside the administrative record. *Id.* (citing Exhs. 2, 5, 6–8, 11). The Court ordered Plaintiff to "address whether he is seeking remand for consideration of new evidence under sentence six of 42 U.S.C. § 405(g), and if so, explain how the new evidence meets the applicable standard." *Id.*

On May 2, 2025, Plaintiff filed his merits brief. ECF No. 14. Courts liberally construe documents filed by pro se litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Woods v. Carey*, 525 F.3d 886, 889–90 (9th Cir. 2008). Because Plaintiff is appearing pro se, the Court liberally construes his brief as asserting the following challenges to the ALJ's opinion: (1) the ALJ erred in concluding Plaintiff's diabetic retinopathy was not a severe impairment; (2) the ALJ failed to incorporate Dr. Shertock's opined moderate mental limitations on concentration, persistence, and pace into the RFC, (3) the ALJ erred by discrediting the reconsideration level DDS state agency medical consultant's and Dr. Tran's respective opined limitations on driving, (4) the ALJ did not properly evaluate Plaintiff's subjective statements regarding his inability to drive, and (5) the ALJ did not properly consider Dr. Campbell's opinion. In addition, Plaintiff proffers new evidence of medical records outside the administrative record. The Court addresses the propriety of Plaintiff's new evidence first before addressing his challenges to the ALJ's opinion.

### B.    Evidence Outside the Administrative Record

A federal court's judicial review of the ALJ's opinion is limited to the certified administrative record. 42 U.S.C. § 405(g); *see Nault v. Colvin*, 593 F. App'x 722, 722 n.1 (9th Cir. 2015) ("Because this is a Social Security review case, the record on appeal is limited to the certified administrative record."); *Toriello v. Colvin*, No. 13-cv-0653-LDG,

2014 WL 2919158, at *1 (D. Nev. June 25, 2014), *aff'd*, 656 F. App'x 845 (9th Cir. 2016) ("Judicial review of the ALJ's final decision must be based solely on the administrative record.").

The Social Security Act provides courts with discretion to remand cases for consideration of new evidence under sentence six of 42 U.S.C. § 405(g) "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *see Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001), *as amended* (Nov. 9, 2001). To qualify for such a remand, a plaintiff must present new evidence that is "material to determining disability" meaning such evidence "must bear directly and substantially on the matter in dispute" and show "a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Miller v. Berryhill*, 732 F. App'x 526, 528 (9th Cir. 2018) (citation modified). "The new evidence must be probative of the claimant's condition as it existed during the relevant time period." *Medina v. Colvin*, No. 16-cv-215-GPC-KSC, 2016 WL 4705571, at *2 (S.D. Cal. Sept. 8, 2016) (citing *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 511–12 (9th Cir. 1987)). In addition, the plaintiff must establish "good cause for his failure to submit the evidence in the prior proceeding." *Id.* at *1 (citing *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)).

In his briefing Plaintiff attaches twelve exhibits in support of his appeal. The exhibits fall into three categories.

First, Exhibits 1 (October 11, 2021 record), 3 (January 19, 2023 record), 9 (January 20, 2021 record), 10 (March 9, 2021 record), and 12 (September 28, 2021 record) are already part of the Administrative Record. AR 483–87, 649–51, 363–66, 344–48, 479–82.

Second, Exhibit 4 is a record from a November 25–26, 2014 hospital admission—five years before the alleged onset of disability. ECF No. 12 at 38–39. Even assuming this record could be material, Plaintiff does not explain, much less establish the requisite good cause for his failure to incorporate this note into the record before the ALJ. Accordingly, Exhibit 4 is not properly before the Court on this review, and remand pursuant to sentence

six is not warranted.

Third, as the Court previously observed, there are numerous records that post-date the ALJ's decision and thus are outside the period of disability at issue in this case. These include Exhibits 2 (May 12–14, 2024 hospital admission records), 5 (March 8, 2024 treatment notes), 6 (February 23, 2024 Opthamology records), 7 (May 15, 2024 Neurology records), 8 (June 10, 2024 Neurology records), and 11 (August 27, 2024 cervical spine records). ECF No. 12 at 6–34, 40–42, 43–46, 48–51, 52–54, 62–63. The Ninth Circuit has repeatedly recognized new evidence that post-dates the period under review and is not retroactive to that period is not material, as it "would not reasonably affect the ALJ's decision." *Petersen v. Berryhill*, 737 F. App'x 329, 332 (9th Cir. 2018) (citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012)); *see also Tonyette O. v. Bisignano*, No. 24-cv-00333-AJR, 2025 WL 1455958, at *8 (C.D. Cal. May 21, 2025) (finding remand for new evidence unwarranted where the evidence post-dated the review period, was distinctly non-retroactive in nature, and nothing in the new evidence would reasonably affect the ALJ's decision). Though Plaintiff claims these records support the severity of his reported symptoms, ECF No. 14 at 2, none of these records purport to apply retroactively to the alleged period of disability—March 1, 2020 through January 26, 2024; therefore, these records are not material as they would not have changed the outcome of Plaintiff's hearing. *See Petersen*, 737 F. App'x at 332. Accordingly, the Court finds remand for consideration of new evidence unwarranted.

The Court next considers Plaintiff's challenges to the ALJ's opinion.

## C. Whether the ALJ Properly Concluded Plaintiff's Diabetic Retinopathy Was Not a Severe Impairment

At step two, an ALJ must determine whether the claimant has a medically determinable impairment—or combination of impairments—that is "severe." 20 C.F.R. § 404.1520(c). To qualify as "severe," the impairment must significantly limit the claimant's "physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and "must have lasted or must be expected to last for a continuous period of at least 12 months" or be

expected to result in death. 20 C.F.R. § 404.1509; *see also Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28, 1985 WL 56856 (1985) (hereinafter "SSR 85-28"). "Basic work activities" include not only physical functions like walking, standing, lifting, pushing, pulling, carrying, but also cognitive functions like using judgment, and understanding, carrying out, and remembering simple instructions. SSR 85-28, 1985 WL 56856 at *3. An impairment is not severe if "the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation modified); *see also* SSR 85-28, 1985 WL 56856, at *3.

"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]" SSR 85-28, 1985 WL 56856 at *4. "Even though a non-severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation modified) (citing SSR 96–8p (1996)).

In his merits brief, Plaintiff cites to the ALJ's finding "based on the objective medical evidence, it appears these conditions have been managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." ECF No. 14 (citing AR 20). Plaintiff appears to argue the ALJ's reasoning is inconsistent with, or even undermined by, the ALJ's findings elsewhere in the opinion that "[o]n 6/29/20, the claimant had a hemoglobin A1c level of 10.3" and on "3/21/22[,] [a] hemoglobin A1c level [of] 10.7%." AR 23–24.[4] The incidents Plaintiff

---

[4] Plaintiff also cites two medical incidents that occurred after the alleged period of disability, including treatment records reflecting Plaintiff was admitted to the hospital in

identifies all relate to Plaintiff's diabetes mellitus type I with peripheral neuropathy and gastroparesis, which the ALJ found were severe impairments and considered them accordingly. AR 20. Thus, to the extent Plaintiff contends the ALJ erred by not finding Plaintiff's diabetes or gastroparesis to be severe impairments at step two, Plaintiff is incorrect.

Because Plaintiff specifically cites his hemoglobin A1c levels as inconsistent with the ALJ's non-severe finding, and hemoglobin A1c levels relate to diabetes,[5] the Court liberally construes Plaintiff's brief as asserting the ALJ erred in finding Plaintiff's diabetic retinopathy—a complication of diabetes—was not a severe impairment. *See* AR 484.

The ALJ found Plaintiff's diabetic retinopathy was not a severe impairment because, as Plaintiff correctly cites, "based on the objective medical evidence, it appears these conditions have been managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance." AR 20. The ALJ further explained considering Plaintiff's diabetic retinopathy, singly or in combination with other impairments (hyperlipidemia, gastroesophageal reflux disease, mild degeneration of the lumbar spine, and minimal degenerative joint disease right wrist), did "not pose more than a minimal limitation in his ability to perform basic work activities" and were therefore non-severe. AR 20.

_____

May 2024 for DKA (diabetic ketoacidosis), which he contends "show a continuation of uncontrolled issues that are still continuing" and an incident in April 2025, where he represents he "threw up from the gastroparesis and had to have emergency services respond to a severe hypoglycemic episode at 3 am." ECF No 14 at 1; ECF No. 12 at 8, 12. As discussed above, both incidents are outside the certified Administrative Record and thus not properly before the Court. Nevertheless, the Court considers them for the limited purpose of construing Plaintiff's argument.

[5]The June 29, 2020 record cited by Plaintiff explained "for someone with known diabetes" a hemoglobin A1c "value of greater than or equal to 7% indicates suboptimal control." AR 420.

The ALJ relied on treatment records showing Plaintiff underwent several laser and intravitreal injection treatments of the eye in early 2023. In January 2023, Plaintiff denied "pain, flashing lights, floaters" and had "no headache; no worsening vision; no total vision loss; no visual field loss; no floaters in visual field; no diplopia; no blurry vision; no photopsia; no wavy lines in vision; no difficulty reading; no drooping eyelid; no growth on eyelid." AR 674. Plaintiff was assessed as having "Proliferative diabetic retinopathy of right eye with macular edema" and "Non-proliferative diabetic retinopathy, moderate, left eye." AR 676. His vision was 20/40 in both eyes. AR 674. On February 13, 2023, a treatment of retinol lesion was performed in Plaintiff's left eye, which Plaintiff tolerated well. AR 679. On February 24, 2023, a laser treatment was performed on Plaintiff's right eye, which Plaintiff also "tolerated well." AR 682. On March 13, 2023, Plaintiff once again denied pain, flashing lights, floaters, or other visual symptoms. AR 683. Plaintiff underwent intravitreal injections of Bevacizumab 10 MG on his right eye. AR 685. On March 24, 2023, laser treatment for diabetic retinopathy was performed on Plaintiff's right eye, which Plaintiff tolerated well. AR 689. The following day, Plaintiff reported to the Emergency Department with complaints of pain, blurred vision, and sensitivity to light. AR 690, 705. He was diagnosed with corneal abrasion and prescribed erythromycin. AR 690, 705. He was seen again two days later for follow up where he was advised to continue treatment. AR 693.

Approximately one month later on April 24, 2023, Plaintiff was treated again by Acuity Eye Group. AR 694. He denied "pain, flashing lights, floaters" as well as any worsening vision or vision loss symptoms. *Id.* Plaintiff underwent intravitreal injection of Bevacizumab 10 MG in his right eye, which he tolerated well. AR 696. Vision in Plaintiff's right eye remained 20/40, while vision in his left eye improved to 20/30-2. AR 694. This appears to be the most recent treatment of Plaintiff's eyes in the Administrative Record.

Based on a detailed review of the entire Administrative Record, the Court finds substantial evidence supports the ALJ's conclusion Plaintiff's diabetic retinopathy was not a severe impairment. Further, the ALJ explained "[d]espite finding both severe and non-

severe impairments" the ALJ "considered the combined effect of all impairments on the claimant's functioning in the residual functional capacity." AR 20. Thus, even if the ALJ erred in finding Plaintiff's diabetes retinopathy was a non-severe impairment, such an error would be harmless "meaning it was inconsequential to the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation modified).

To the extent Plaintiff asserts more generally the ALJ did not properly consider the uncontrolled nature of his diabetes, as exemplified by the June 29, 2020 and March 31, 2022 hemoglobin A1c levels Plaintiff cites in his brief, the Court finds substantial evidence supports the ALJ's findings in this regard. The ALJ considered Plaintiff's ongoing medical treatment and records, including in relevant part his early onset diabetes, complications of neuropathy and gastroparesis. AR 23–27. The ALJ found on whole, the record reflected continued follow up and generally conservative treatment for diabetes mellitus, type I with peripheral neuropathy, hypothyroidism, and gastroparesis, including an omnipod pump. AR 24. While the record contains numerous instances where Plaintiff consistently had elevated hemoglobin A1c levels demonstrating the "poorly controlled" nature of his diabetes, the record also contains other instances where Plaintiff's hemoglobin A1c or glucose levels were close to or within range. *Compare* AR 797, 616, 660 *with* AR 824, 829, 862. Numerous treatment records reflect Plaintiff's diabetes was more stable when Plaintiff was on the Dexcom monitor and omnipod insulin devices and even indicated Plaintiff's diabetes was deemed "manageable" through lifestyle changes and medications. AR 577, 701, 709, 726, 741. The Court recognizes the evidence may be susceptible to more than one rational interpretation and acknowledges Plaintiff views the evidence differently. Nevertheless, the Court finds the ALJ's finding was based on a rational interpretation of the record and therefore supported by substantial evidence. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) ("As we cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence."). Given the highly deferential standard of review, the Court will not disturb the ALJ's conclusion. *See Woods*, 32 F.4th at 788 ("Where evidence is susceptible to more

than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (quoting *Burch*, 400 F.3d at 679).

### D.    Whether the RFC Reflects Dr. Shertock's Opined Moderate Impairments Regarding Concentration, Persistence, and Pace

Plaintiff cites an RFC limitation that Plaintiff "can keep pace sufficient to complete tasks and meet quotas" as contrary to Dr. Shertock's opined "moderate impairments in understand, remember and carry out complex instructions, maintain attention and concentration for the duration of the evaluation, maintain adequate pace while completing tasks, withstand the stress of an 8 hour day, maintain adequate persistence while completing tasks." ECF No. 14 at 1. Plaintiff does not elaborate on this argument. Because he quotes the RFC limitation of "can keep pace sufficient to complete tasks and meet quotas," the Court construes this argument as asserting the ALJ failed to incorporate Dr. Shertock's opined moderate limitation on concentration, persistence, or pace into the RFC.

In response, Defendant asserts the ALJ properly resolved conflicts in the evidence and accounted for all limitations he found supported by the evidence in the RFC, while excluding those alleged limitations the ALJ reasonably rejected. ECF No. 16 at 17.

### 1.    Dr. Shertock's Opinion

Plaintiff underwent a psychological evaluation by Dr. Tania Shertock on January 28, 2022. AR 526. Following the exam, Dr. Shertock submitted a Mental Status Report in which she opined as to Plaintiff's mental work-related abilities. AR 526–30. In relevant part, Dr. Shertock found Plaintiff's perception was normal and his thought process was "grossly logical, organized, and coherent." AR 527–28. She found Plaintiff's memory was grossly intact, as he was able to recall "detailed, autobiographical, and historical information" and his insight and judgment were within normal limits. AR 528. Dr. Shertock found Plaintiff met the criteria for ADHD, OCD, and GAD diagnoses, and his overall intellectual ability was within low average range, though his memory function was intact. AR 528–29. In her assessment, she found Plaintiff was capable of understanding, remembering, and carrying out simple instructions. AR 529. She opined Plaintiff had

14

moderate impairments in the areas of: (1) understanding, remembering, and carrying out complex instructions; (2) maintaining attention and concentration for the duration of the evaluation; (3) maintaining adequate pace while completing tasks; (4) withstanding the stress of an eight-hour day; (5) maintaining adequate persistence while completing tasks; (6) the ability to endure the stress of the interview; (7) the ability to adapt to changes in routine work-related settings; (8) the ability to complete a normal workday or workweek without interruptions from the claimant's psychiatric condition. AR 529. Dr. Shertock found Plaintiff's ability to interact with the public, supervisors, and coworkers was adequate, and he could manage supplemental funds. AR 529–30.

In evaluating the Paragraph B criteria, the ALJ determined Plaintiff had moderate limitations in the areas of understanding, remembering or applying information and in concentrating, persisting or maintaining pace, and he had mild limitations in the areas of interacting with others and in adapting or managing oneself. AR 21. With respect to the area of concentrating persisting or maintain pace, the ALJ cited Dr. Shertock's opinion, reasoning while Plaintiff reported symptoms of ADHD, OCD, and anxiety, he was able to perform concentration tasks and had normal thought content and process. AR 21. The ALJ also found Plaintiff's hearing testimony that he worked for door dash a month before the hearing for around 30 hours per week was inconsistent with greater restrictions in this area. AR 21.

In evaluating Dr. Shertock's medical opinion as part of the RFC determination, the ALJ accurately summarized Dr. Shertock's opined mental limitations. AR 26. The ALJ found Dr. Shertock's opinion partially persuasive because it was partially supported by and consistent with her mental status examination and normal mental status examinations. AR 26. The ALJ found Dr. Shertock's opined mental functional limitations partially accounted

for Plaintiff's severe mental impairments but was too restrictive in the categories of adapt and social based on the record as a whole and Plaintiff's hearing testimony. AR 26.[6]

### 2.    Applicable Law for the RFC Assessment

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1 ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most.*"). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments—even those that are not severe—and must assess his "work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1, *5; *see* 20 C.F.R. § 404.1545(a)(1)–(2) and (e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

An RFC determination must be based on "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). A court must uphold an ALJ's RFC assessment when "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs when he provides an incomplete RFC determination that ignores or discounts "significant and probative evidence in the record favorable to [the plaintiff's] position." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

### 3.    Analysis

Plaintiff asserts the RFC limitation "can keep pace sufficient to complete tasks and meet quotas" fails to reflect Dr. Shertock's opined moderate impairments on concentration, persistence, and pace. ECF No. 14 at 1. When read in isolation, Plaintiff's argument

---

[6] Plaintiff does not challenge the ALJ's evaluation of Dr. Shertock's opinion including the ALJ's rejection of the social and adapt restrictions. ECF No. 12, 14.

appears at first blush to have merit. The RFC, however, must be read in the context of the ALJ's other assessed mental limitations.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006 (citation modified). The ALJ, however, need not recite medical opinions verbatim. *McIntosh v. Colvin*, No. 16-cv-0963-JAH-BGS, 2018 WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018). In translating his medical findings into the RFC, the ALJ assessed mental limitations that Plaintiff "can understand, remember, and carry out simple, routine tasks, and is limited to jobs requiring only simple work-related decisions however can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work." AR 22.

The Ninth Circuit has held an ALJ's assessment limiting a claimant to simple tasks "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Dunn v. Berryhill*, 722 F. App'x 684, 685 (9th Cir. 2018) (finding the ALJ's RFC limiting the plaintiff to "simple, repetitive, 1-2 step tasks" incorporated the plaintiff's concentration deficits by limiting him to "simple tasks"); *Mitchell v. Colvin*, 642 F. App'x 731, 733 (9th Cir. 2016) (finding the ALJ's RFC limiting the plaintiff to "simple, repetitive tasks" adequately accounted for moderate limitations in concentration, persistence, and pace); *see also Fergerson v. Berryhill*, No. 17-cv-00161-KES, 2017 WL 5054690, at *5 (C.D. Cal. Nov. 1, 2017) ("A limitation to 'simple, routine, repetitive' work sufficiently accommodates medical-opinion evidence that the claimant had a 'moderate' limitation in concentration and attention"). Here, Dr. Shertock opined Plaintiff was capable of understanding, remembering, and carrying out simple instructions, even though he was moderately impaired in maintaining attention and concentration for the duration of the exam as well as in maintaining adequate pace and persistence while completing tasks. AR 529. The ALJ found Dr. Shertock's opinion persuasive in this area and directly incorporated the concrete restriction—Plaintiff was capable of understanding, remembering, and carrying out simple instructions—into the

RFC by limiting Plaintiff to "simple, routine tasks." *Compare* AR 529 *with* AR 22. In accordance with Ninth Circuit authority, the Court finds the ALJ's RFC limiting Plaintiff to simple, routine tasks is consistent with, and sufficiently accounts for, Dr. Shertock's opined moderate impairments in concentration, persistence, and pace.

Plaintiff also references Dr. Shertock's opinion that Plaintiff had a moderate impairment in his ability to "withstand the stress of an eight-hour day" as contrary to the RFC. ECF No. 14 at 1; AR 529 (citation modified). In response, Defendant contends there is no inconsistency between the RFC and Dr. Shertock's opinion, citing numerous district court cases for the proposition moderate attendance limitations are adequately accounted for by an RFC limiting the claimant to "simple, routine tasks." ECF No. 16 at 17 (citing, among others, *Tamra W. v. O'Malley*, No. 22-cv-9098-JPR, 2024 WL 283684, at *5 (C.D. Cal. Jan. 25, 2024))).

In *Tamra W.*, the court analyzed three lines of cases regarding whether a restriction to "simple, routine, repetitive" work adequately accounts for moderate attendance limitations. 2024 WL 283684, *4–5. The first line consisted of cases concluding moderate limitations were not accounted for by an RFC limitation to simple, routine tasks; the second line were cases concluding the opposite. *Id.* Relevant here, the *Tamra W.* Court discussed a third line of cases where the medical opinion did not provide concrete restrictions (e.g., the number of days or percentage of time the plaintiff would be absent) and courts found no error in rejecting medical-opinion evidence without explanation by not expressly incorporating attendance limits in the RFC. *Id.* at *5 (citing *Sandra S. v. Kijakazi*, No. 21-cv-1248-AJB-MDD, 2022 WL 3355803, at *8 (S.D. Cal. Aug. 12, 2022)), *report and recommendation adopted*, 2022 WL 4180973 (S.D. Cal. Sept. 12, 2022)). The *Tamra W.* Court found the third line of cases most persuasive, particularly "in light of the SSA's 2017 changes to the definition of a medical 'opinion' to focus on specific, express functional limitations[.]" *See id.* This Court agrees.

Preliminarily, the Court is not convinced Dr. Shertock's finding Plaintiff was moderately impaired in his ability to withstand the stress of an eight-hour day, without

more, amounts to an attendance limitation. Because Dr. Shertock did not quantify this "moderate" impairment, the Court presumes she used the word consistent with the agency's definition. The Listing of Impairments describes an individual with a "moderate limitation" in an area as someone whose "functioning in th[at] area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(2)(c). The ALJ could have reasonably understood Dr. Shertock's opinion as meaning Plaintiff had more than a slight limitation in withstanding stress but could still function satisfactorily (fair). *See Tamra W.*, 2024 WL 283684, at *5; *Rector v. Colvin*, No. 13-cv-00168-BEN-BGS, 2014 WL 794636, at *7 (S.D. Cal. Feb. 26, 2014). This is consistent with the Ninth Circuit's reasoning in *Stubb-Danielson* discussed above. The Court finds no error in this regard. Even if this limitation amounts to an attendance restriction as Defendant posits, the Court finds the reasoning of *Tamra W.* and *Sandra S.* persuasive here, as Dr. Shertock did not specify an attendance or absenteeism limitation, much less specify how many days a month Plaintiff would be impacted. *See* AR 529; *Tamra W.*, 2024 WL 283684, *5. Further, there is no other evidence in the record to support an attendance restriction based on Plaintiff's mental limitations. *See* AR 25–27.[7]

In sum, the Court finds the ALJ's RFC assessment was consistent with and sufficiently captured the moderate impairments identified in Dr. Shertock's opinion regarding Plaintiff's concentration, persistence, and pace.

---

[7] The Court notes Dr. Campbell opined Plaintiff would be absent from work about two days per month due to his physical impairments. AR 867. During the hearing, the ALJ posed a second hypothetical RFC to the vocational expert that reflected the limitations ultimately adopted in the RFC plus the additional limitation of either (1) off task greater than 10% of the workday or (2) absent two or more days a month on a recurring basis. AR 63. As the ALJ did not adopt either the off-task or absenteeism limitations in the RFC, he implicitly rejected Dr. Campbell's opined limitation in this regard.

### E.    Whether Substantial Evidence Supports the ALJ's Rejection of Opined Limitations on Driving

Plaintiff also challenges the ALJ's rejections of the reconsideration level DDS state agency medical consultant's and Dr. Tran's respective opined limitations on driving from the RFC assessment.[8]

### 1.    Applicable Law for Evaluating Medical Opinions and Prior Administrative Medical Findings

Plaintiff's claims are subject to the 2017 amendments governing the evaluation of medical opinions because they were filed after March 27, 2017. 20 C.F.R. § 404.1520c. The revised regulations eliminated the deference given to treating or examining physicians and instead require an evaluation of the "persuasiveness" of medical opinions and prior administrative medical findings based on the following factors: supportability, consistency, relationship factors, specialization, and "other factors." *See Woods*, 32 F.4th at 787, 792; 20 C.F.R. § 404.1520c(c)(1)–(5).

The "most important factors" the ALJ considers when evaluating the persuasiveness of such opinions are "supportability" and "consistency." *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in

---

[8] Plaintiff does not generally dispute the ALJ's evaluation of the reconsideration level state agency medical consultant or Dr. Tran. *See* ECF No. 14. Rather, because Plaintiff specifically challenges the limitation on driving, the Court focuses its analysis accordingly.

the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ must articulate "how persuasive" he finds "all of the medical opinions" from each doctor or other source and must also "explain how [he] considered the supportability and consistency factors" in reaching his findings. *Woods*, 32 F.4th at 792; *see* 20 C.F.R. § 404.1520c(b)(2).

Here, the reconsideration level DDS state agency medical consultant assessed environmental limitations including "no work at heights, drive at work, or operate dangerous machinery." AR 123–24. Orthopedic consultative examiner, Dr. Tran, opined a restriction on workplace and environmental activities including "driving limitation to an occasional basis." AR 608. The ALJ found both opinions only partially persuasive (and thus partially discredited each opinion) because each was only partially supported by and consistent with the record including physical examinations. AR 25–26. Though the ALJ did not expressly reject the reconsideration level medical consultant's opined prohibition on driving at work,[9] the ALJ rejected Dr. Tran's opined limitation on occasional driving, finding it was "not supported by the record" because Plaintiff had "testified he had a drivers license and drove" and "had worked delivering food for door dash the month prior to the hearing working 'less than 30 hours per week.'" AR 26, AR 24–25.

### 2.    Analysis

Plaintiff contends his "insecurity and fear of driving leading to an unwillingness to drive were not given proper merit due to [his] attempting to doordash which [he] ha[s] not

---

[9] Although the ALJ did not explicitly address his rejection of the reconsideration level DDS state agency medical consultant's assess limitation of no driving, both the rejection and rationale for doing so is clear from the opinion as a whole, particularly as the ALJ sufficiently explained his reason for rejecting Dr. Tran's less limited restriction on driving (occasional).

been able to consistently do." ECF No. 14 at 1. Defendant asserts substantial evidence supports the ALJ's rejection of a limitation to occasional driving as not supported by the record. ECF No. 16 at 20.

The Court finds substantial evidence supports the ALJ's rejection of opined limitations on driving as not supported by the record and inconsistent with his hearing testimony. The ALJ accurately summarized Plaintiff's testimony: he had a driver's license, was still driving, and had been driving to deliver food for door dash throughout the month prior to the hearing for "less than 30" hours per week. AR 39–40. The ALJ rejected the opined limitation on occasional driving as not supported, explaining Plaintiff "had recently worked delivering food and testified he had a drivers license and drove at the hearing." AR 26. "An ALJ is permitted to consider any work done by a claimant when evaluating a disability claim, regardless of whether the work constitutes substantial gainful activity." *Nadon v. Bisignano*, No. 24-3506, --- F.4th ----, 2025 WL 2089066, at *3 (9th Cir. July 25, 2025) (quoting 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.")). Though Plaintiff now contends he has not been *consistently* able to work at DoorDash, his testimony before the ALJ was not so qualified; indeed, Plaintiff did not testify as to *any* limitation on his ability to drive for approximately thirty hours per week while working for DoorDash. *See* AR 40. In sum, the Court finds substantial evidence supports the ALJ's discrediting of the two opinions limiting Plaintiff's driving.

**F.    Whether the ALJ Properly Discredited Plaintiff's Subjective Statements Regarding his Inability to Drive**

Alternatively, Defendant construes Plaintiff's argument that his "insecurity and fear of driving leading to an unwillingness to drive were not given proper merit due to [his] attempting to doordash" as challenging the ALJ's evaluation of Plaintiff's subjective statements. ECF No. 16 at 4, 12–13. To the extent Plaintiff asserts the ALJ improperly discredited his subjective statements restricting his ability (or willingness) to drive, the

Court finds the ALJ's stated rationale is a specific, clear, and convincing reason supported by substantial evidence for properly discrediting such statements.

### 1.    Applicable Law for the ALJ's Evaluation of Subjective Statements

The Ninth Circuit has reaffirmed the two-step analysis for crediting a claimant's subjective symptom testimony. *Ferguson*, 95 F.4th at 1199. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014). The claimant must only prove the impairment could reasonably have caused some degree of pain or other symptom; he is not required to prove the impairment reasonably could be expected to cause the severity of the pain or symptoms he has alleged. *Id.* "Further, the claimant is not required to produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* (citation modified).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014–15). "Ultimately, the clear and convincing standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation modified). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199 (citing *Lingenfelter*, 504 F.3d at 1040).

The ALJ found Plaintiff satisfied the first step. AR 23. Neither party disputes this finding or alleges Plaintiff was malingering. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective statements regarding his inability to drive. *See Ferguson*, 95 F.4th at 1199.

24-cv-1731-LL-MMP

## 2.    Analysis

Plaintiff asserted in his application he could no longer drive because there was "extreme weakness in his arms, hands, legs, and feet." AR 245. In his Function Report dated November 22, 2021, Plaintiff stated he drove a car and, while he had someone drive when he felt pain or weakness and indicated there were incidents when he pulled over to vomit, he "normally" went out on his own. AR 261. In his Function Report dated July 20, 2022, Plaintiff explained he was able to drive but had vomited while driving and experienced physical pain that limited his movement and ability to drive, so "typically" his wife or someone else "mainly" drove when he went out. AR 290–91. As discussed above, at the hearing Plaintiff testified he had a driver's license and still drove, though he had his wife drive on days when he experienced floaters due to his diabetic retinopathy. AR 39–40, 48. Plaintiff also recounted a time where he started vomiting while driving and pulled over. AR 52. Plaintiff testified he "usually" drove himself to appointments. AR 52. As discussed above at length, he also testified at the hearing he had been working at DoorDash delivering food for less than thirty hours per week throughout the month before the hearing. AR 40.

"An ALJ may also consider whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Smartt*, 53 F.4th at 499 (citation modified); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (an ALJ may discount a claimant's testimony if the claimant's daily activities contradict the testimony or if the daily activities meet the threshold for transferable work skills). However, "[o]nly if the level of activity [is] inconsistent with Claimant's claimed limitations do daily activities have any bearing on Claimant's credibility." *Ferguson*, 95 F.4th at 1203; *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged" can be a reason to discredit a claimant's testimony.).

The ALJ discounted Plaintiff's statements he could no longer drive as inconsistent with his testimony at the hearing—specifically, he drove and had worked delivering food for "less than 30 hours" per week throughout the month before the hearing. AR 24–25; *see*

AR 40. Plaintiff's testimony and activities directly contradicted his claimed inability to drive due to his alleged impairments. Further, the level of activity—driving to deliver food for approximately thirty hours per week—has direct bearing on his claimed limiting effect, his inability to drive. The Court finds the ALJ's rationale that Plaintiff drove and worked driving to deliver food the month leading up to the hearing is a specific, clear, and convincing reason supporting the ALJ's conclusion to discredit Plaintiff's statements regarding his inability and unwillingness to drive.

## G.    Whether the ALJ Properly Considered Dr. Campbell's Opinion

Plaintiff challenges the ALJ's evaluation of Dr. Campbell's opinion, though the precise basis for doing so is not entirely clear from his brief. The Court summarizes Dr. Campbell's opinion and then addresses Plaintiff's contentions.

Plaintiff's doctor, Dr. Brianna Campbell, completed a Physical Residual Functional Capacity Questionnaire dated September 29, 2023. AR 863–66. Dr. Campbell indicated she had treated Plaintiff approximately every three months since October 3, 2022. AR 863, 866. She diagnosed him with Type 1 diabetes with neuropathy, mixed connective tissue disease, and chronic low back pain, noting a fair prognosis. AR 863. Dr. Campbell indicated Plaintiff had experienced no side effects to medication or treatment and no psychological conditions affected his physical conditions. *Id.* She also opined Plaintiff's pain or symptoms would "occasionally" interfere with attention and concentration needed to perform simply work tasks, and he could walk zero blocks without rest or severe pain. AR 864.

The ALJ accurately summarized Dr. Campbell's opinion as follows:

Brianna Campbell, M.D., the claimant's doctor, assessed occasionally affected attention and concentration, can sit 15 minutes at a time, for 2 hours total in an 8-hour workday, can stand for 30 minutes at a time, for 2 hours total in an 8-hour workday, must walk 5 minutes at a time, for a total of 30 minutes in a day, needs to shift positions at will from sit/stand/walk, needs to take unscheduled breaks, lift and carry 20 pounds occasionally, 10 pounds frequently, frequently look down/up, turn head right/left, hold head in static position, occasionally twist, rarely stoop, crouch, never climb ladders, rarely

24-cv-1731-LL-MMP

climb stairs, 20% grasp and finger bilaterally, 30% reach bilaterally, and would be absent from work about 2 days per month.

AR 26; *see* 864–65. The ALJ found Dr. Campbell's opinion partially persuasive, reasoning it was only partially supported by and partially consistent with the record including the objective evidence of physical examinations to support the severe physical condition. AR 26. The ALJ found her opinion internally "inconsistent and confusing" because she opined "no significant limits to reaching, handling and fingering," yet assigned significant manipulative limits in her medical source statement. AR 26; *see* AR 865. The ALJ also found Dr. Campbell's opinion was not supported by her treatment records, reasoning:

> Further, while she notes some persistent wrist pain in her treatment notes [], these are fairly recent observations indicating the problem is relatively new and has not been adequately treated. In addition, the record indicates no follow-up testing done for the wrist pain indicating the problem was not as severe as indicated.

AR 26 (citation omitted).

Plaintiff first contends Dr. Campbell "noted several limitations in [his] functional assessment" but the assessment "only included being absent from work for 2 days for medical appointments and did not include days being absent due to symptoms." ECF No. 14 at 1. The Questionnaire asked Dr. Campbell to "estimate, on the average, how many days per month [the] patient is likely to be absent from work as a result of the impairments or treatment" to which Dr. Campbell checked the box "[a]bout two days per month." AR 866. The ALJ correctly summarized Dr. Campbell's opinion as Plaintiff would be absent from work for about 2 days per month. AR 26. To the extent Plaintiff now disputes the accuracy of Dr. Campbell's response provided in the Questionnaire (which was properly summarized by the ALJ), such a challenge is not properly before the Court on federal judicial review under 42 U.S.C. § 405. *See Nault*, 593 F. App'x at 722 n.1 ("Because this is a Social Security review case, the record on appeal is limited to the certified administrative record.").

To the extent Plaintiff challenges the ALJ's evaluation of persuasiveness of Dr. Campbell's opinion, the Court finds substantial evidence supports the ALJ's conclusion. The ALJ considered both supportability and consistency of Dr. Campbell's opinion, finding it was only partially supported by the record, including her own treatment of Plaintiff, and further finding Dr. Campbell's opinion was internally "inconsistent and confusing" as it specifically contradicted itself regarding her opined limitations on Plaintiff's reaching, fingering, and handling. AR 26; s*ee* AR 865. Plaintiff appears to acknowledge this inconsistency, as he claims Dr. Campbell "accidentally checked the no limitations on reaching, handling, and fingering." ECF No. 14 at 1. Nothing in the Administrative Record addresses, much less supports, Plaintiff's characterization of Dr. Campbell's assessment. Moreover, to the extent Plaintiff disputes the accuracy of Dr. Campbell's opinion, such a challenge is not properly before the Court on federal judicial review under 42 U.S.C. § 405. *See Toriello*, 2014 WL 2919158, at *1 ("Judicial review of the ALJ's final decision must be based solely on the administrative record.").

/ /

/ /

/ /

24-cv-1731-LL-MMP

## V.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Linda Lopez under 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c)(1)(a) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) affirming the Commissioner's decision.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **August 21, 2025**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERE**D that any Reply to the Objections shall be filed with the Court and served on all parties no later than **September 4, 2025**.

**IT IS SO ORDERED**.

Dated:  August 7, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge